### L. & J. PALMER *against* LORD.

The *act for preventing usury*, (Sess. 10. ch. 13. 1 *N. R. L.* 64.) contains no *limitation* to a suit, at the instance of the party aggrieved, to compel the defendant to discover and refund the usurious excess of interest which has been paid; *provided* no *qui tam* or popular action has been commenced, at the suit of a third person, under the act, previous to the filing of the bill, to recover such excess. A *plea*, therefore, in bar of the suit, that the plaintiff did not file his bill *within one year* after the usurious interest complained of was paid, is bad.

Before the statute, the party aggrieved had a right of action at common law, to recover back the *surplus* beyond the principal and legal interest; the *second* section of the statute, therefore, does not give a new right of action, though it omits the *penalties* and *forfeitures* contained in the *English* statutes.

The right of the party aggrieved, to bring an action, *after* one year, may be lost, by the interference of the *popular* action, given by the statute; but, until such popular action has been commenced, and a right has attached in a third person, *it seems*, that the party aggrieved may bring his action; and his right to the surplus of interest will be fixed, and a popular action cannot be sustained, if brought afterwards, though within the second year; and if no such popular action is brought within the second year, the right of action continues in the party aggrieved, subject only to the general limitation of actions at law.

THIS was a bill, filed *January* 23d, 1822, for a discovery and account, and to recover back money paid by the plaintiffs to the defendant for excess of interest, over and above the lawful interest, on various loans and money transactions, between the parties, from *June*, 1810, to *June* or *July*, 1818. The bill stated the particular transactions in which the defendant had, from time to time, exacted usurious interest, and alleged, that the plaintiffs have paid to him 340 dollars, for excess of interest, beyond the lawful rate of interest; and they offered to pay to him all the

*May 1st.*

1822.

PALMER
v.
LORD.

principal and lawful interest due and owing to him ; but the defendant refused to account, or to repay the usurious excess, and, on the 31st of *December*, 1821, entered up judgment on a judgment bond, and issued execution, &c. The bill *prayed*, that the defendant may be decreed to come to a just and fair settlement with the plaintiffs, and that so much of the principal and interest, as was fairly due to the defendant, on the transactions stated in the bill, be allowed to him, and the balance paid over by him to the plaintiffs ; and that the defendant be decreed to deliver up to the plaintiffs, the checks, drafts, &c., mentioned in the bill, and to acknowledge satisfaction of the judgment entered up against the plaintiffs, and for an injunction to restrain his proceeding on the execution, and for discovery and general relief. An injunction was accordingly granted.

The defendant, on the 22d of *February*, 1822, put in a *plea*, which was sworn to, that if the plaintiffs, or either of them, ever had any cause of suit against the defendant, concerning the moneys charged as paid beyond lawful interest, or were entitled to a discovery concerning the same, such sums of money were not received, nor did they accrue, nor did the right of discovery exist *within one year* before the bill was filed, and process of *subpœna* served ; and, for that reason, the defendant was not liable to be sued, &c. That the defendant, within the year aforesaid, had not agreed to come to any account with the plaintiffs, to satisfy them for the moneys received. That none of the sums, charged to have been received as usurious, were paid within one year before filing the bill, &c. ; and the defendant pleaded the limitation, contained in the act, entitled "an act for preventing usury," passed *February* 8th, 1787, (Sess. 10. ch. 13.) setting forth the second and fourth sections of the act ; and pleading the matters aforesaid, and the statute, in bar of the bill.

The cause was set down for hearing on the plea.

*H. Bleecker*, in support of the plea, contended, that the bill could only be sustained, if at all, under the *fourth* section of the act, which compels a discovery; and the party is, in accordance with the principles of equity, acquitted from the penalties and forfeitures imposed by the *English* statute. Instead of these penalties, our act gives a new remedy to the party, by an action at law, to recover back the excess of interest paid beyond the lawful rate, at any time within one year after the money is paid; and if the party himself neglects to bring his action, within the year, then the act gives any third person a right to sue for, and recover the same, the one moiety of the amount recovered for the use of the person prosecuting, and the other moiety for the poor of the town or place where the offence was committed. The *fourth* section is *auxiliary* to, and commensurate with, the remedy by action at law, given in the *second* section; where, therefore, the right to sue at law does not exist, the party is not entitled to a bill of discovery. This is manifest, from the words of the act, which declares, that " for the better discovery" of the usury paid, &c. all and every person or persons who, by virtue of this act, *shall or may be liable to be sued for the same,* shall be obliged and compellable to answer, upon oath, such bill or bills as shall be preferred against him, &c., in the Court of Chancery, for discovering, &c. Now, the person or persons, who are compellable to discover, are only liable " to be sued for the same," " within one year." This case, then, in regard to the limitation, is stronger than those where the general statute of limitations is pleaded, and by which this Court considers itself bound. (*Lansing* v. *Starr*, 2 *Johns. Ch. Rep.* 150.) For the statute, in this case, does not rest on a mere *presumption*, but *permits* a recovery, and confines that permission to one year; and the right to a discovery by bill, is expressly limited to the party's liability *at law;* thus creating a positive limitation of the equitable right. The case of *Bosanquet* v.

1822.
PALMER
v.
LORD.

*Dashwood*, (*Cases temp. Talbot*, 37.) cited in *Dey* v. *Dunham*, (3 *Johns. Ch. Rep.* 182.) was that of a bill filed against an *executor*, to discover the usury received by his *testator*, and where the executor, being a *mere trustee*, could not be personally affected by the penalties and forfeitures, and, of course, could not make the objection to a discovery. It is a well settled rule in the *English* Court of Chancery, that a bill for a discovery of usury may be demurred to, upon the clear principle of equity, that a party cannot be called on to criminate himself, or to expose himself to a penalty or forfeiture. (*Cooper's Equ. Pl.* 202, 203, 204.)

Our statute has new modelled the law as to *usury*. It has adopted that part only of the *English* statute, which forfeits and avoids the *security at law;* and has rejected the penalties of *triple value, fine,* and *imprisonment;* and has added the *remedy,* by an *action at law,* to recover back the usurious excess paid, and by a bill in Chancery, *in aid* of the action at law, but confining and limiting this remedy to one year. In *England,* there is no such remedy by action of law ; nor is there any limitation to the relief afforded by the *English* statute. Our statute confines the bill to cases only where the party is liable to be sued at law, and controls the remedy given to recover back the usury paid. The bill, in this case, does not seek to cancel the judgment, as a vicious and *forfeited security,* but merely to recover back 340 dollars, for usury or excess of interest paid. Indeed, a *judgment* is not a *contract* or *assurance,* within the statute. (*Ord on Usury,* 93.) The plaintiffs seek to destroy the judgment, by showing, that the defendant owes them, for excess of interest, more than the amount of the judgment.

*W. A. Duer,* contra, contended, that the remedy given by the statute was merely *cumulative.* That the party, before the statute, might have brought his action at com-

mon law, to recover back the money illegally extorted from him. A plea like the present is not to be favoured in this Court, which upholds and enforces the statute against usury. Though a party may, in some cases, be concluded, by suffering a verdict and judgment to pass against him, on usurious notes, without applying in due season to this Court for relief; yet, in a case where he is entitled to relief, the Court will open the accounts at large, as to all the dealings and transactions between the parties from the commencement of the first loan, though included in a judgment confessed. (*Thompson* v. *Berry*, 3 *Johns. Ch. Rep.* 395.)

1822.

PALMER
v.
LORD.

THE CHANCELLOR. The bill seeks to compel the defendant to account for moneys which have been exacted, and paid to him for excess of interest, beyond the rate allowed by law, during a series of transactions detailed in the bill. The defendant pleads in bar *the act for preventing usury*, as requiring the right of discovery of the usurious excess, and the right of action to have accrued within one year previous to the commencement of the suit. The cause has been set down for hearing upon this plea, and the simple point is, whether there be any such statute limitation to the suit.

The statute of the 8th of *February*, 1787, for *preventing usury*, has omitted the penalties and forfeitures contained in the *English* statutes, and in the colony act of 1737. It only prohibits any higher rate of interest than 7 per cent., and declares void all contracts and securities wherein more shall be exacted. It then provides, that where a higher rate of interest shall have been paid, the borrower may recover back the excess by an action of debt at law, within one year next after the payment; and in case the party aggrieved does not sue within the year, any other person, within a year after such neglect, may bring a *qui tam* suit for such usurious excess, and one moiety of

the recovery shall be to his use, and the other moiety to the use of the poor of the town where the offence was committed.

There is nothing in this provision that applies directly to the case. The statute does not limit, by any express words, as in the general act for the limitation of actions of law, the bringing of the suit to one year. It only gives the popular action, in case of neglect on the part of the borrower to bring his suit within the year : the popular action is, of course, limited to the year next succeeding, because such an action rests entirely upon the statute, and without it no such popular action could exist. But the party aggrieved by the payment of illegal interest was entitled, before the statute of 1787, and upon principles of common law, to his remedy for a recovery of the excess of interest, on the ground of its being illegally and oppressively exacted. The case of *Ashley* v. *Reynolds*, (2 *Show.* 915. 2 *Barnard K. B.* 40. S. C.) in 1731, shows, that an action for money had and received would lie to recover back the surplus beyond legal interest exacted and paid. In *Smith* v. *Bromley*, (cited in the notes to *Doug.* 696.) decided at *Guildhall*, in 1760, by Lord *Mansfield*, he vindicated such an action by a course of clear and decisive reasoning, and showed that the case of *Tompkins* v. *Bernet*, (1 *Salk.* 23. *Skinn.* 411.) had been very inaccurately reported, and egregiously misunderstood. He observed, that " an action would lie to recover back the surplus of interest, if the principal and legal interest had been paid ; and that the man who, from mere necessity, pays more than the other can in justice demand, and who is called in some books *the slave of the lender*, cannot be said to have paid it willingly. If it be illegal and iniquitous in the defendant to *take*, it was so to *detain*. If the act be in itself immoral, or a violation of the general laws of public policy, there the party paying shall not have his action, for where both parties are equally criminal

against such general laws, the rule is *potior est conditio defendentis.* But there are other laws which are calculated for the protection of the subject against oppression, extortion, deceit, &c. ; and if such laws are violated, and the defendant takes advantage of the plaintiff's condition or situation, there the plaintiff shall recover ; and it is astonishing the reports do not distinguish between the violation of the one sort and of the other. It would be absurd to apply the maxim *volenti non fit injuria,* and to say that any one transgresses a law made for his own advantage, willingly. It .is necessary, for the better support and maintenance of the law, to allow the action, for no man will venture *to take,* if he knows he is liable to *refund.*"

It is to be observed, that in *Jones* v. *Barkley,* decided in 1781, (*Doug.* 698.) Lord *Mansfield* said, he adhered, and the rest of the Judges of the K. B. agreed, to all the doctrine laid down in *Smith* v. *Bromley.*

It is, therefore, very clear, that the act of 1787 created no new right of action in the party aggrieved ; and the act to prevent usury was made on purpose to protect persons who are in necessitous circumstances, from being made victims to extortion and injustice. The payment of usurious interest is always an unwilling payment. It is rarely made, but under the pressure of distress. On the other hand, gaming may be said to be a voluntary act, and the rule may fitly apply, that *volenti non fit injuria.* It has, therefore, been said, that losers by gaming could not, at common law, recover back the money paid, nor without the permission of the statute of 9 *Anne.*

The last section of the statute concerning usury, relates to a bill of discovery in this Court, but it says nothing about the limitation of the suit. It only declares, " that all and every the person or persons who, by virtue of this act, shall or may be liable to be sued for the same, (*i. e.* for the money, goods, or other things, so taken, &c.) shall be obliged and compellable to answer, upon oath,

such bill or bills as shall be preferred against him, her or them, in the Court of Chancery, for discovering the sum or sums of money, goods, or other things, so taken, accepted, or received." Perhaps, this provision may have been inserted for greater caution, and in *aid* of the action at law, to recover back the excess, and probably the bill might be brought by the common informer, after he had commenced his suit at law. But as there are no penalties or forfeitures existing in our statute, and as the bill to discover and return the usurious excess will only apply when the real debt and interest have been paid, or tendered, there can be no sound objection to the bill of discovery; and the remedy in this Court to the party aggrieved was perfect before the statute. There is no limitation to the suit in this Court; and yet if there was a clear and positive statute limitation to the suit at law, it might then be the duty of this Court, as in other cases where suits in equity are not within the words of the statute of limitations, to adopt and apply the same limitation to the relief sought here. But we ought to require a positive limitation at law, and not one uncertain and depending upon a very doubtful and unsettled construction. I should be inclined to think, that the action of the party is not limited at law by the usury act, any further than a limitation may grow out of a collision between the private and the popular actions. If the common informer commenced his suit after the year, the right attaches in him ; and a subsequent suit by the party aggrieved, either at law or in this Court, would be inconsistent with that right, and probably would not be sustained ; for the offender ought not to be obliged twice to refund the usurious excess, once to the common informer, for the use of him and of the poor, and again to the party aggrieved. He ought not to pay the money twice, for that would be superadding a penalty or forfeiture which the statute does not give. The right of the party aggrieved is therefore necessarily limited, and lost by the

interference of the popular action given by the statute be-
fore he has asserted his right. But until such a popular
action has been commenced, and some third person has
thereby created and *attached a right in himself*, I am not
prepared to say that the party aggrieved may not have his
action after the year, equally as if no such popular action
had ever been given. And the actual existence of a suit
at law or equity by the party aggrieved, would *fix* the
right to the surplus in himself, and prevent the subsequent
popular action. There is no right in any third person to
be recognised, until some third person has actually brought
his suit; and if the party aggrieved has anticipated him,
though after the year, he suffers no injury, for he had no
right. The party aggrieved ought, at least, to stand upon
an equal footing with the community at large, and to have
a right in common with any other person to sue ; and if any
question should arise, it would seem to be between him
and the overseers of the poor of the town, touching a moi-
ety of the recovery, and not between him and the subse-
quent common informer, or between him and the guilty
party. The right of the party aggrieved is then liable to
be arrested during the course of the second year, by the
popular action ; but if there be no popular action com-
menced, the right of the party aggrieved is not in the
mean time suspended. It exists in full force, and may, at
any time before the common informer has attached the
right in himself, be exerted ; and it survives the second year,
if no such popular action be previously brought ; and con-
tinues subject only, as before the statute, to the general
limitation of suits by the law of the land.

To show the long established right of the borrower to
recover back, as well in this Court as at law, the surplus of
interest which had been illegally and oppressively exacted,
I need only refer to the case of *Bosanquet* v. *Dashwood*,
(*Cases temp. Talbot*, 37.) in 1734, and which was cited
with much approbation by Lord *Mansfield*, in a case to

which I have already referred. The bill was by assignees of a bankrupt against the executors of the lender, who had, in his lifetime, lent several sums of money to the bankrupt upon bond, and had taken advantage of his necessities, and exacted interest at the rate of 10 per cent., (though six per cent was then the legal interest,) and had entered into other agreements for that purpose, and the bankrupt so continued paying 10 per cent. interest from 1710 to 1724. The case, in respect to the continuation and constant occurrence of the extortion, bears a considerable resemblance to the present case as detailed in the bill, though the present case is undoubtedly much more aggravated, and is a signal instance of persevering, and grievous oppression. The answer of the executors admitted the charges, but contended that the bankrupt had acknowledged the accounts, and voluntarily paid. It was insisted, on the part of the executors, that it was hard to inquire into transactions of so long a standing, and when the parties had on all sides submitted to the agreement. But Sir *Joseph Jekyll*, the Master of the Rolls, decreed that the defendants should account, and that if the testator had received more than what was due, with legal interest, it should be, refunded ; and this decree was affirmed by Lord Ch. *Talbot*. He observed, that Chancery would not decree penalties ; but this Court would never see a creditor running away with an exorbitant interest beyond what the law allows, though the money had been paid. The Court would relieve against a covenant which was unjust and oppressive, and particularly where the covenant or agreement was against an express law, as the statute of usury, though the party may have submitted for a time to the terms imposed upon him. The payment of the money will not alter the case in a Court of equity, for it ought not to have been paid. The debtor was oppressed, and his necessities obliged him to submit to those terms. Nor could it be said, in any case of oppression, that the party

oppressed was *particeps criminis*, since it was this very
hardship, which he laboured under, and which was im-
posed on him by another, that constituted the crime. The
case of gamesters, to which that had been compared, was
in no way parallel, for there both parties are criminal. It
is a common direction, in all cases, where securities are
sought to be redeemed, that if the party has been over-
paid, he shall refund. Must he keep, observes the Chan-
cellor, that he has no right to, merely because he has got
it in his hands?

These observations of Lord *Talbot*, and those also of
Lord *Mansfield*, in *Smith* v. *Bromley*, are very weighty,
and entirely convincing as to the justice and equity of the
action of the borrower, to recover back the surplus inte-
rest. We can hardly suppose, in a case of such command-
ing equity, that the act of 1787, made on purpose to pre-
vent oppressive usury, and to relieve the injured party, in-
tended to confine his remedy to the period of one year,
when, in all other cases, under the general act of limita-
tions, the party aggrieved has three years to bring his suit
for any cause of action accruing under a statute, and li-
mited to him. The popular action, given in the usu-
ry act, was intended only to enforce, with more abso-
lute certainty, the return of the surplus, and, thereby, to
increase the risk and lessen the temptation to usury; and
we ought to take the words in the strictest sense, so far as
they may be supposed to impose a limitation on the ante-
cedent remedy of the injured party. This was the doc-
trine of Lord *Hardwicke*, in *Rawden* v. *Shadwell*, (*Amb.*
269.) where the loser at play brought a bill to be relieved
against his bond, and to be repaid the money he had ad-
vanced, and the Lord Chancellor decreed accordingly;
and, as it is said, with great clearness, notwithstanding the
transaction was many years ago, and notwithstanding the
statute of 9 *Anne*, had allowed the loser to sue for the mo-
ney paid within three months, and on his neglect, a com-

mon informer might sue.    He held, that, under that act, the securities for money won at play were void, and payment, under any security, could not be supported; and that the time limited for suing, referred only to the money actually paid at the time it was lost, and did not extend to securities.

The construction of the act of 1787, which I have suggested in this case, is perfectly consistent with the rights of the common informer, and with the antecedent rights of the party aggrieved, since they both may exist in accordance with the equity and policy of the statute.

I shall, accordingly, overrule the plea, with costs, and direct that the defendant, within six weeks, answer the bill.

The following order was entered :

" It is *declared*, that there is no limitation of time in the act for preventing usury, in the plea referred to, as to a suit in this Court, at the instance of the party aggrieved, to compel the defendant to discover and refund the usurious excess which has been paid, provided it be not averred, and be not the fact, that a popular action was duly and *bona fide* commenced under the said act, prior to the filing of the bill to recover such excess, and no such averment is contained in the plea in this case.    It is, thereupon, *ordered* and *adjudged*, that the plea be overruled, with costs, to be paid by the defendant to the plaintiffs, and that the defendant pay such costs, to be taxed, and put in a full and sufficient answer to the said bill, in six weeks after service of a copy of this order on him, or his solicitor, or that the bill be taken *pro confesso* against him."(a)

(a) In *Wilcox, qui tam,* &c. v. *Fitch,* (20 *Johns. Rep.* 472.) the Supreme Court decided, that a *qui tam* action, on the *fourth* section of the act for the prevention of frauds, which gives a *moiety* of the sum recovered to the *people,* and the other moiety to the party aggrieved, was not within the statute of limitations.

In *Wheaton* v. *Hibbard,* (20 *Johns. Rep.* 290.) the Supreme Court held, that the borrower, who had paid more than the legal rate of in-

terest, was not confined to the remedy given by the statute; but might maintain *assumpsit,* at common law, to recover back the excess of interest, on paying, or offering to pay, the principal lent, with lawful interest.