Thurman, C. J.
There is no valid objection to either the first or the second count of the declaration. It was decided in Veach v. Elliott, 1 Ohio St. 139, that the act for the prevention of gaming (Swan’s Stat. new ed. 439), comprehends every kind of bet or wager. And as to the form of the declaration, the 3d section of the act provides that it shall be sufficient in law for the plaintiff to allege that the defendant is indebted to the plaintiff, or received to the plaintiff’s use the money so lost and paid, or converted the goods won of the plaintiff to the defendant’s use, whereby the plaintiffs *355 action accrued to him, according to the form of this act, without setting forth the 'special matter.” The counts under consideration fully comply with what is here required, and consequently the demurrers to them must be overruled.
The second plea to the third count raises the question, or was intended to raise it, whether money lost and paid upon a bet can be recovered by the loser, in an action commenced more than six months after such payment ? I say it was intended to raise this question, but whether it does so fairly, is not quite certain. For that count is the common indebitatus count for the price of goods sold, money had and received, etc., and contains no allusion what-' ever to any bet or to the gaming act. Under such a count, it is, to say the least, very doubtful whether a recovery could be had for *money lost upon a bet, and if it could not, the plea above [355 mentioned was neither necessary nor proper. But as this view is not taken by counsel, we are content to let it pass, and consider the question they designed to present.
The first section of the gaming act declares: “ That all promises, agreements, notes, bonds, or other contracts, mortgages, or other securities, when the whole or any part of the consideration of such promise, agreement, conveyance, or security, shall be for money or other valuable thing whatsoever, won or lost, laid, staked, or betted, at, or upon any game or games, of any kind, or under any denomination or name whatsoever, or upon any horse-race, or cock-fight, sport, or pastime, or on any wager, or for the repayment of money lent or advanced at the time of any game, play, bet, or wager, for the purpose of being laid, betted, staked, or wagered, shall be absolutely void and of no effect.”
By the 2d section it is provided:
“ That if any person or persons, by playing at any game or games, or by means of any bet or wager, shall lose to any other person or persons, any sum of money or other thing of value, and shall pay or deliver the same, or any part thereof, to the winner or winners, the person or persons so losing or paying, or delivering, may, at any time within six months next after said loss and payment, or delivery, sue for and recover the money or thing of value so lost and paid, or delivered, or any part thereof, from the winner or winners thereof, with costs of suit, by action of debt, founded on this act, to be prosecuted in any court, or before any j ustice of the peace, having competent jurisdiction of the same.”
*356 Thp 4th section is as follows:
u That if any person or persons, losing such money or thing of value as hereinbefore described, shall not, within the time specified, without collusion or deceit, sue, and with effect prosecute, for the money or thing of value so lost and paid, or delivered, it shall be lawful for any person, by such action or suit, to sue for and recover the same, with costs of suit, against any winner or winners as aforesaid, for the use of the person prosecuting the same.”
On the part of the defendant, it is contended that these provisions limit the right of the loser to sue to the six months succeeding the payment of the bet; and, in support of this proposition, we are referred to the case of Vaughan v. Whitcombe, 5 Bos. & Pull. 413. In that case, it was held that the statute 9 Anne, c. 14, “ which 356] avoids all securities for *goods or money lost at unlawful games, and gives the loser a power to recover back the same within •three mouths, does not make the contract void, but voidable only, .-and therefore, the loser can not recover them after three months, -.though the winner can show no title to them, except what arises ¡from having won them at play.” For, at common law, such title would be good, 4 Bac. Abr. 450, and as the statute did not prohibit ¡betting, or make the wagering contract itself void, but only any .-securities given in pursuance of it, the plaintiff who sued, not .upon the statute, but at common law, in trover for the property, .clearly had no rightto recover. Had he brought an action under the Btatute after the expiration of the three months, to recover the .damages given by the act, the case would be somewhat analogous to the present. But, even in such a case, I imagine he could not have recovered. For, had he sued within the three months, he .could only have recovered the value of the money or property lost .-and paid; whereas in the qui tam action given by the statute to ¡any person or persons, upon the loser’s failure to sue in three .months, treble damages were given, one-half to the informer, and the other to the poor of the parish. To have held, then, that the loser could prosecute such a suit,-would have been a direct inducement to losers not to sue within the three months, as their damages .would be greatly enhanced by suing afterward. The policy of the law would thus, in a great measure, have been defeated, and a construction given to the act that could not have been-designed by iParliament.
*357 But our statute, though to a great extent copied from .that of Anne, is much more comprehensive, and in some of its provisions very different. It avoids not only the security given upon a gaming consideration, but the gaming contract also. Both- are declared void, and, in addition to this, the gamesters are subjected to criminal punishment. But what is more deserving of note here, it gives to. the informer, who sues, no greater damage than the loser could recover, and, therefore, there is not the implication arising upon the statue *of Anne against the loser’s right to sue after [357. the specified time.
It would seem to be clear, then, for the reasons I have stated, that the case of Vaughan v. Whitcombe does not support the present plea.
Among other points made for the plaintiff, it is argued that he has a right to recover his .money, because he paid it on a void consideration ; and it is said that it matters not whether the consideration is void by the common law, or made so by statute. But I apprehend that, without the aid of the statute, he would be clearly remediless. He lost his money in an illegal transaction, to which he was a party, by the commission of an offense against the criminal law. He executed the illegal contract by full payment, after which the common law would leave him just where he had placed himself. Raguet v. Roll, 7 Ohio (pt. 1), 78; Doe ex dem Raguet v. Roll, 7 Ohio (pt. 2), 70; Goudy v. Gebhart, 1 Ohio St. 262.
The question then is, what right of action does the statute give him? It gives him expressly a right to sue within six months (sec. 2); and if he fail to do so within that time, it then authorizes “any person” to sue (sec. 4). The language is not any other person, but simply “ any person.” This is evidently comprehensive enough to include him, and we see nothing in the .act to. authorize us to exclude him by interpolating the word other. The object of the statute seems to be to give the'loser the exclusive right of action the first six months; after that, to give it to any one, whether the loser or another, who first sues. The six months provision is therefore no bar to this suit. The only bar, by lapse of time, is found in the general act of limitations. These views are supported by the reasoning of Chancellor Kent in a somewhat analogous case, Palmer v. Lord, 6 Johns. Ch. 102, 103, in which it was held that a party who had paid usurious interest. might recover-it back by- *358, 359 suit commenced after one year from the payment, although the provision of the statute was, “that when a higher rate of 358] ^interest- shall have been paid, the borrower may recover back the excess, by an action of debt at law, within one year next after the payment; and incase the party aggrieved does not sue within the year, any other person, within a year after such neglect, may bring a qui tarn suit for such usurious excess.”
The same construction that we now give to our act has been given by the court of appeals of Kentucky to their statute of 1833, which is not more favorable to the loser than is ours. Faris v. Kirtley, 5 Dana, 460.
The demurrer to the plea must be sustained, and. the cause remanded to the district court for trial.